IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| CYNETHA RUSH | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION NO. |
| | ) | |
| vs. | ) | |
| | ) | HON. |
| UNITED WHOLESALE MORTGAGE, LLC | ) ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

# COMPLAINT

PLAINTIFF, CYNETHA RUSH, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits her Complaint against UNITED WHOLESALE MORTGAGE ("UWM").

# JURY DEMAND

COMES NOW PLAINTIFF, CYNETHA RUSH, and hereby makes her demand for trial by jury.

# JURISDICTION

1. At all times relevant to this complaint, Plaintiff Cynetha Rush was a resident of Oakland County in the State of Michigan.

1

2. Defendant UWM is a mortgage lender in Pontiac, Michigan. UWM maintains a principal place of business in Oakland County at 585 South Boulevard East, Pontiac, Michigan 48341.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to 42 U.S.C. §1981.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5. Venue is proper in the Eastern District of Michigan because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6. Plaintiff, an African American individual, has been employed by UWM since she was hired on or about September 17, 2018 as a Team Lead for Quality Assurance.

7. At all relevant times during her employment, Plaintiff maintained a strong work ethic, performed her duties in a satisfactory manner, and adhered to the policies and procedures of the Defendant.

8. Plaintiff was hired by Jamie Hamilton, who resigned from the company on October 3, 2018, shortly after Plaintiff was hired.

9. Plaintiff was later supervised by Lakshmi Janardhan, from October 29, 2018 to May 13, 2019, who made offensive comments toward Plaintiff such as asking Plaintiff who hired her and complaining that she was "too in the weeds" with her team, despite differing directions from previous leadership to get into the weeds.

10. Plaintiff later learned that Lakshmi deprived her of merit increases in her pay by purposely giving her extra opportunities for improvement in her performance evaluations, suggesting less-than-satisfactory performance.

11. Plaintiff was told by Jacob Jang on or around October 24, 2022 that another employee, Madhu Kannan, an Indian male, was too introverted and Plaintiff needed to "break him."

12. On or around this same date, Brian Sweet advised Plaintiff to get "f***ing rid of" Reginald Richardson.

13. Later in 2020, Plaintiff received a new AVP, Jillian Mantua.

14. Plaintiff reported some of her team members for being insubordinate, but Ms. Mantua did not assist. After Plaintiff requested assistance from other employees, Ms. Mantua told Plaintiff she needs to "coach them up or coach them out."

15. Other team leads similarly situated to the Plaintiff who were white, such as Shelly Koch, were taken more seriously than Plaintiff when they raised concerns about their teams.

3

16. When Plaintiff raised concerns about her team, she was told she was being angry and disrespectful. Individuals Plaintiff reported were not similarly reprimanded.

17. Plaintiff later received a different supervisor, Sharad Puri.

18. Sharad made inappropriate advances towards Plaintiff, such as asking her to go to lunch with him in his personal vehicle.

19. Sharad stated that Plaintiff was an "iron fist" and a "silk glove," which made Plaintiff feel singled out as a black woman.

20. Plaintiff reported Sharad's conduct and asked to be moved to a different position. Plaintiff was moved from Information Technology Development to Information Technology Support team lead of "Team Glitches Git Stitches."

21. Shelly Koch, an agent of UWM, falsely accused Plaintiff of being unwilling to watch over her team members and the team members of other leaders.

22. Plaintiff was falsely accused of yelling and being aggressive during a team huddle on September 27, 2022.

23. On September 30, 2022, Dustin Kuczynski, an agent of Defendant, reprimanded Plaintiff for allegedly yelling and being combative with her peers, even though Plaintiff denied the allegations and Kuczynski was out of the office at the time the yelling incident allegedly took place.

24. On October 24, 2022, Plaintiff was placed with a new team commonly referred to as "Team Cereal Killers." under the leadership of Jacob Jang which was disorganized and underperforming.

25. Many team members in Plaintiff's new team did not have backgrounds necessary for the work they were performing and were deemed "negative low performers."

26. Team members on Plaintiff's new team were causing outbursts and made it difficult for Plaintiff to work with them, but when Plaintiff reported the issues to her supervisor she was only told to "coach up or coach out."

27. Problematic employees were always assigned to Plaintiff's team and she was unfairly chastised when these individuals made mistakes.

28. Plaintiff was told by SVP Steve Kowal that she should no longer refer to her team as "Number 1" because it created dissention.

29. Plaintiff was told that her methodologies for leading her team were "not like others."

30. Plaintiff's merit increases to her pay were consistently decreased during her employment due to the low-performing employees that were placed on her team.

31. Plaintiff's merit increase to her pay was 8.00% in 2022, 2.77% in 2023, 2.62% in 2024, and 1.02% in 2025, evidencing the improper reduction in Plaintiff's merit increases over time.

32. Defendant removed Plaintiff from her leadership position and demoted her to a Senior Business Analyst position on or around January 10, 2025.

33. Plaintiff was barred from accepting any leadership responsibilities after her demotion.

34. Plaintiff was never suspended and did not receive any write-ups other than the false accusation that she yelled during a team huddle.

35. Plaintiff reported that she was being treated unfairly to her supervisors and other employees, such as Michelle Salvatore, ReJaun Foster, Stephanie Harvey, and others, but Defendant did not act to remedy the issue.

36. Defendant treated Plaintiff unfairly and discriminatorily by crediting the unsubstantiated claims of employees while disregarding Plaintiff's statements contradicting them.

37. Plaintiff's demotion was unjustified, as it was based on false accusations, hearsay, and a biased, incomplete investigation.

38. Plaintiff believes that the decision to demote her was motivated by her race and was part of a pattern of disparate treatment toward African American employees.

39. As a result of Defendant's discriminatory and wrongful demotion, Plaintiff has suffered economic damages, emotional distress, and harm to her professional reputation.

## COUNT I
## DISCRIMINATION IN VIOLATION OF 42 USC § 1981

1. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

2. 42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including opposing unlawful acts.

3. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

4. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

5. Plaintiff engaged in activity protected by 42 USC § 1981, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff refused to admit to conduct she did not do and reported the offensive advances of her supervisor, Sharad Puri.

6. The intentional discrimination and retaliation by Defendant that Plaintiff experienced included wrongfully demoting her.

7. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

8. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was wrongfully demoted.

9. But for Defendant's unlawful discrimination against Plaintiff, Plaintiff would not have suffered damages as set forth herein including her demotion.

10. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

**COUNT II**
**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")**

11. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

12. At all material times, Defendant was an employer, and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

13. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color, or association with a particular race.

14. Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to ELCRA.

15. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

16. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

17. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

18. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

19. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ELCRA

20. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

21. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

22. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

23. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

24. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff refused to admit to conduct she did not do and reported the offensive advances of her supervisor, Sharad Puri.

25. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she spoke directly to agents of Defendant.

26. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, which included demoting her.

27. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

28. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

29. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in earnings and earning capacity, humiliation, mental anguish, and emotional distress.

30. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

31. Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, Cynetha Rush, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  May 8, 2025			Respectfully Submitted,

*/s/ Carla D. Aikens*
Carla D. Aikens (P69530)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com

12