UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CYNETHA RUSH,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED WHOLESALE MORTGAGE LLC,<br><br>    Defendant. | Case No. 25-cv-11355<br><br>Honorable Robert J. White |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION (ECF No. 8)**

Plaintiff Cynetha Rush commenced this action against her employer United Wholesale Mortgage, LLC (UWM) for discrimination and retaliation on the basis of race. (ECF No. 1, PageID.7–11). Rush alleged that UWM not only treated her differently than white colleagues, (*id.* at PageID.3), but also that UWM demoted her for race-based reasons, (*id.* at PageID.6). Rush asserted claims for: (1) violation of constitutional and civil rights under 42 U.S.C. § 1981; (2) discrimination under the Elliot-Larsen Civil Rights Act, MCL § 37.201, *et seq.* (ELCRA); and (3) retaliation in violation of ELCRA. (ECF No. 1, PageID.7–11).

Shortly after Rush filed her complaint, UWM moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) and to compel arbitration. (ECF No. 8). According

to UWM, Rush's claims belonged in arbitration per her employment agreement. (*Id.* at PageID.34). As a result, the Court should dismiss her case. (*Id.* at PageID.38). For the reasons explained below, the Court agrees with UWM and will therefore grant the motion.[1]

## I. Background

UWM is a mortgage lender in Pontiac, Michigan. (ECF No. 1, PageID.2). Rush began working at UWM in September 2018 as a Team Lead for Quality Assurance. (*Id.*). Around that time, Rush and UWM entered into an Employment Agreement (the Agreement) to govern the parties' relationship. (ECF No. 8-5, PageID.75). The Agreement contained an Arbitration Provision that mandated arbitration for "material disputes" that arose under the Agreement. (*Id.* at PageID.88). The Arbitration Provision culminated in the following statement: "BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS GIVING UP THE RIGHT TO A TRIAL IN A COURT OF LAW AS TO ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS, AND IS HEREBY AGREEING TO SUBMIT ALL SUCH CLAIMS TO BINDING ARBITRATION." (*Id.*).

---

[1] The Court finds the parties' briefs sufficient to resolve the motion absent a hearing. *See Lazo v. Redcliffe Med. Devices, Inc.*, 567 F. Supp. 3d 809, 811 n.1 (E.D. Mich. 2021) (resolving motion to compel arbitration without hearing); *Pacheco v. Ford Motor Co.*, No. 2:22-cv-11927, 2025 WL 2255623, at *3 n.3 (E.D. Mich. Aug. 7, 2025) (same).

Around January 2025, UWM removed Rush from her leadership position and demoted her to the role of Senior Business Analyst. (ECF No. 1, PageID.6). Rush subsequently filed the present lawsuit and claimed that UWM treated her differently from similarly situated white employees and that her demotion was racially motivated. (*Id.*). UWM filed the present motion in response. (ECF No. 8). It argued that because the Arbitration Provision specifically mandates arbitration of discrimination claims arising from Rush's employment, the Court should dismiss the case and compel arbitration. (*Id.* at PageID.34).

Rush disagreed. (ECF No. 9). She instead claimed that the Arbitration Provision is against Michigan public policy and thus cannot be enforced. (*Id.* at PageID.118–19). And regardless, the evidence is insufficient to prove that Rush agreed to the Provision in the first place as required by Michigan contract law. (ECF No. 9, PageID.122–24). In the event that the Court finds the agreement binding and enforceable, Rush asked the Court to stay the matter pending the outcome in a different Michigan Supreme Court case, *Saidizand v. Gojet Airlines*, 991 N.W. 2d 208 (Mich. 2023). In *Saidizand*, the Michigan Supreme Court is apparently "strongly considering striking mandatory arbitration for all claims under" ELCRA, so a stay is warranted to determine if Rush's ELCRA claims are even arbitrable. (ECF No. 9, PageID.120–21).

3

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief may be granted." UWM moved to dismiss on the grounds that the Arbitration Provision forecloses judicial resolution of Rush's claims. (ECF No. 8, PageID.38).  In addition to dismissing the complaint, UWM asked the court to compel arbitration. (*Id.* at PageID.45).

Under 9 U.S.C. § 4, "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" the court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  When a party moves to compel arbitration, a court must determine as a threshold matter: (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "if federal statutory claims are asserted . . . whether Congress intended those claims to be nonarbitrable"; and (4) if only some of the claims are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).  To determine whether the parties agreed to arbitrate the dispute, courts may look beyond the four corners of the complaint and consider the arbitration agreement itself as well as other evidence presented by the parties. *Memmer v. United Wholesale Mtg., LLC*,

135 F.4th 398, 404 (6th Cir. 2025).  In doing so, the Court effectively treats the issue like that of a Rule 56 motion for summary judgment, *Tucker v. United Wholesale Mtg., Inc.*, No. 24-1595, 2025 WL 1082316, at*1 (6th Cir. Apr. 10, 2025), and the Rule 56 framework thus applies. *Memmer*, 135 F.4th at 404.  That means the Court will only deny a motion to compel arbitration if "the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

**III.   Analysis**

The Court finds that not only is the Arbitration Provision valid, but also enforceable as to the claims asserted.  Despite her arguments to the contrary, Rush consented to the Employment Agreement and its effects.  What is more, the Arbitration Provision is not against public policy, and there is no reason to delay resolution of the motion pending the decision in *Saidizand*.  In fact, the Sixth Circuit, on three separate occasions within the past year, affirmed the validity, and the enforceability generally, of the same exact arbitration provision between employees and the same Defendant, UWM. *Memmer*, 135 F.4th at 406–07; *Gavette v. United Wholesale Mtg., LLC*, No. 24-1557, 2025 WL 318224, *2–3 (6th Cir. Jan. 28, 2025); *Tucker*, 2025 WL 1082316, at *3.  Coincidentally, Rush's counsel represented all plaintiff-appellants in those prior cases. (ECF No. 8, PageID.35).

**A.     The Arbitration Agreement is Valid and Enforceable.**

A valid arbitration agreement is required for a court to compel arbitration. To determine whether a valid contract exists, courts "look to state law." *Tucker*, 2025 WL 1082316, at *2; *see also Gavette*, 2025 WL 318224, at *1 (noting courts "look to state contract law to determine whether the arbitration clause itself was validly obtained"). Here, Michigan law governs per the Agreement. (ECF No. 8-5, PageID.87).

Generally, the moving party "bears the initial burden to produce evidence sufficient to allow a trier of fact to conclude that the parties entered a contract to arbitrate." *Memmer*, 135 F.4th at 404. Once met, the burden shifts to the non-moving party "to place the validity of the agreement at issue." *Id.* To create a genuine dispute over whether a party accepted a contract, the party needs to present "specific facts, as opposed to general allegations, that would allow a rational trier of fact to find that he did not acknowledge the agreement or learn about the arbitration condition of employment in other ways." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021) (citation omitted).

In Michigan, "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 101 (2016) (citation omitted). Rush argued that the Arbitration

Provision is invalid because of a "lack of consideration" and "no mutuality of agreement." (ECF No. 9, PageID.124). That is, UWM did not inform Rush that by signing the Agreement, she agreed to the Arbitration Provision and therefore gave up her constitutional right to a trial by jury. (*Id.*; ECF No. 9-1, PageID.129). According to Rush, she would not have agreed to the Arbitration Provision if she knew its implications. (ECF No. 9-1, PageID.129).

Overall, the Court does not find that a genuine dispute of fact exists as to the validity of the Agreement. Despite her efforts, Rush offered little-to-no evidence to support her claim that the Agreement is invalid under Michigan law. First, there is consideration; Rush signed the Arbitration Provision in exchange for the employment and benefits that came therewith. In addition, Rush presented no defense to her signature other than statements that she never would have signed the Agreement if she knew of the Arbitration Provision. But that statement "do[es] not amount to a denial that [Rush] saw and signed the agreement." *Memmer*, 135 F.4th at 405. By signing the Agreement, the Court presumes that Rush read and understood the Arbitration Provision's terms. *Id.* And critically, as mentioned, the Sixth Circuit found valid the same Arbitration Provision, administered by the same company (UWM), on three separate occasions within the past year. Absent any facts to undermine the Agreement's presumption of validity, the Court finds that the parties mutually agreed to arbitrate.

Now that the Arbitration Provision's validity is established, the Court will address the remaining threshold questions. To start, Rush's claims fall within the scope of the Arbitration Provision. Rush alleged discrimination and retaliation in violation of federal and state statutes. (ECF No. 1, PageID.7–11). The Arbitration Provision states "ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS" will be submitted to arbitration. (ECF No. 8-5, PageID.88). The Agreement is straightforward; Rush's claims are clearly covered. *See Memmer*, 135 F.4th at 406 (finding ELCRA claims fell within scope of the same arbitration provision); *Tucker*, 2025 WL 1082316, at *2 (finding UWM's arbitration provision covered "all discrimination or other statutory claims arising" from employment including those under § 1981 and ELCRA). Next, Rush's claims, both state and federal, are arbitrable. *See Tucker*, at *2 (recognizing § 1981 and ELCRA claims as arbitrable). Finally, since all claims are arbitrable, the Court need not stay the case.

> **B.     Rush's Case Law is Inapplicable.**

Rush argued that requiring her to arbitrate her claims is against Michigan public policy. But the case law she presented in support of her argument is inapplicable. The primary case Rush relied on – *Rayford v. American House Roseville I, LLC*, --- N.W.3d ---, No. 163989, 2025 WL 4732464 (Mich. July 31, 2025) –has nothing to do with the facts at issue here. Instead, the Michigan Supreme Court held in *Rayford* that "adhesive boilerplate employment agreement[s] that

shorten[] a limitations period must be examined for reasonableness." *Id.* at *1. But the Arbitration Provision presently before the Court does not purport to shorten any limitations period, so *Rayford*'s holding does not affect the outcome here.

And Rush's takeaway from *Rayford* is ultimately an unjustified leap. According to Rush, the Michigan Supreme Court "made clear that contractual provisions that are non-negotiable, buried in fine print, or presented as a condition of employment cannot be presumed enforceable," especially when such provisions affect civil rights claims. (ECF No. 9, PageID.119). The Court is unable to find an instance in the opinion where the Michigan Supreme Court said as much, however, and Rush failed to pinpoint any relevant language in her response. Rather, *Rayford* revolved exclusively around the enforceability of a shortened limitations period. Plus, given that the Sixth Circuit affirmed the enforceability of UWM's Arbitration Provision three times in the past year, the Court is unpersuaded that the Provision is against public policy.

### C.   The Court Will Not Stay the Case.

Rush asked the Court to stay the case pending the Michigan Supreme Court's opinion in *Saidizand*.[2] (ECF No. 9, PageID.126). The Court, however, will follow

---

[2] Rush did not request that the Court stay the case pending arbitration on the merits. Rather, Rush asked the Court to hold in abeyance its ruling on arbitrability until after *Saidizand* is decided. (ECF No. 9, PageID.121). The Court therefore will not construe Rush's request as one made under 9 U.S.C. § 3 such that a stay is required.

9

the Sixth Circuit's lead in *Tucker* and decline Rush's request. Even if the Michigan Supreme Court prohibited outright the arbitration of certain claims, the FAA would still displace the conflicting rule. *See Tucker*, 2025 WL 1082316, at *3. So although Michigan may bar mandatory arbitration of ELCRA claims, federal courts could continue to authorize arbitration of such claims under the FAA. *Id.*; *see also Gavette*, 2025 WL 318224, at *1 ("the FAA generally preempts state law governing arbitration agreements").

> D.  **UWM's Request for Attorney's Fees Is Denied.**

UWM claimed it is entitled to attorney's fees for having to bring the underlying motion and reply brief. (ECF No. 10, PageID.136). That is, Rush's counsel is undoubtedly aware of previous Sixth Circuit decisions finding the same Arbitration Provision valid and enforceable and affirming dismissals and orders compelling arbitration on claims arising under those Provisions. (*Id.* at PageID.134, 136). Because Rush's counsel presented "identical arguments" as those cases here, UWM's burden in having to respond, again, is unjustified and warrants relief. (*Id.* at PageID.134).

But "[t]he FAA does not expressly provide for the payment of attorney's fees to a litigant who obtains a judicial order compelling arbitration." *Morrisette v. Pinnacle Asset Grp., LLC*, No. 14-10259, 2014 WL 7792548, at *4 (E.D. Mich. Nov. 5, 2014), *report and recommendation adopted in part*, 2015 WL 540689, at *1 (E.D.

10

Mich. Feb. 10, 2015) (adopting denial of attorney's fees).  At this juncture, the Court will decline to award attorney's fees.

* * *

For the reasons given, the Court **ORDERS** that the motion to dismiss and compel arbitration (ECF No. 8) is **GRANTED**.

The Court **FURTHER ORDERS** that the Clerk of the Court is directed to close the case on the docket.

Dated: December 2, 2025                     s/Robert J. White
                                                            Robert J. White
                                                            United States District Judge